NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BEN DINKINS, JR.,**
*Petitioner,*

v.

**UNITED STATES POSTAL SERVICE,**
*Respondent.*

---

2010-3033

---

Petition for review of the Merit Systems Protection Board in DC0752090358-I-1.

---

Decided: November 5, 2010

---

DAVID A. BRANCH, Law Offices of David A. Branch and Associates, PLLC, Washington, DC, for petitioner.

L. MISHA PREHEIM, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and BRIAN M. SIMKIN, Assistant Director. Of counsel on the brief was ALICE L.A.

COVINGTON, Office of the General Counsel, United States Postal Service, of Washington, DC.

———————————

Before RADER, *Chief Judge*, and LOURIE and DYK, *Circuit Judges*.

PER CURIAM.

## DECISION

Ben Dinkins, Jr. appeals from the final decision of the Merit Systems Protection Board ("the Board") dismissing his appeal challenging the United States Postal Service's ("the Postal Service") decision to remove him from the position of mail handler at the Postal Service. *Dinkins v. United States Postal Service*, MSPB Docket No. DC0752090358-I-1 (June 11, 2009). Because the Board correctly found that it lacked jurisdiction based on Dinkins' waiver of his right to appeal his removal, we *affirm*.

## BACKGROUND

Dinkins was employed at the Postal Service as a PS-4 mail handler. On July 6, 2007, the Postal Service proposed to remove Dinkins, and after giving him an opportunity to reply to its proposal, issued a final decision removing him from his position on August 2, 2007. On November 29, 2007, the Postal Service and Dinkins entered into a Last Chance Agreement ("LCA") under which Dinkins would return to his position but was required to maintain a satisfactory attendance record during the next six months. Specifically, he could have no more than three unscheduled absences and no instances of absence without leave ("AWOL") during the six month period of the LCA. Under the LCA, Dinkins waived his

right to appeal any subsequent removal based on the prior proposal.

On May 22, 2008, the Postal Service proposed to remove Dinkins based on his breach of the LCA. The notice cited Dinkins' attendance records as showing numerous unscheduled absences and being AWOL during the six month period following the LCA. The union initiated a grievance of the proposed removal. On June 2, 2008, the Postal Service settled the grievance with the union by extending the LCA for an additional year, until May 22, 2009. The settlement agreement was signed by a union representative, Terry Stokes.

On December 3, 2008, the Postal Service again proposed to remove Dinkins for violation of the LCA, specifically for numerous unscheduled absences as well as for being AWOL for 136 hours since the settlement agreement had been entered into. On January 14, 2009, the Postal Service issued its final decision removing Dinkins from his position. Dinkins appealed the removal to the MSPB.

On appeal, the administrative judge held that the Board lacked jurisdiction to entertain Dinkins' appeal because Dinkins had entered into an LCA that waived his right to appeal. Dinkins argued that the LCA had not been extended beyond the initial six months because he never authorized the union to agree to any extension, and that his right to appeal had therefore not been waived. The AJ rejected that argument, crediting instead the testimony from Dinkins' supervisors that Dinkins had authorized the union to enter into the agreement and was aware of the settlement reached on his behalf. Moreover, the AJ found that Dinkins had violated the LCA in May 2008 and the Postal Service could have removed Dinkins at that time without entertaining the grievance filed by

the union and extending the LCA by another year. Thus, the AJ dismissed the case, holding that Dinkins had failed to make nonfrivolous allegations that would give the Board jurisdiction to entertain his appeal.

Dinkins petitioned the Board for review. The Board denied Dinkins' petition and the AJ's initial decision became the final decision of the Board. Dinkins timely appealed.

## DISCUSSION

The scope of our review in an appeal from a Board decision is generally limited. We can only set aside the Board's decision if it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see Briggs v. Merit Sys. Prot. Bd.*, 331 F.3d 1307, 1311 (Fed. Cir. 2003). Whether the Board has jurisdiction over an appeal is a question of law, which we review *de novo. Delalat v. Dep't of Air Force*, 557 F.3d 1342, 1343 (Fed. Cir. 2009).

Dinkins argues that the Board's decision that he had waived his right to appeal his removal was arbitrary, capricious, and unsupported by substantial evidence. He argues that the LCA that he entered into with the Postal Service could only be amended in writing and with his consent. He contends that he never executed a written agreement to change, alter, or amend the LCA and, in fact, was not aware of the settlement reached by the union until weeks later, at which point he informed the union shop steward that he was not agreeable to the settlement. Thus, he argues, the settlement reached by the union was a new agreement entered into without his consent, thereby rendering any extension of the prior LCA

involuntary and ineffective. According to Dinkins, the AJ's decision to interpret the later settlement as extending the LCA and imposing the terms of the LCA on Dinkins, including waiver of any appeal rights, was improper. Dinkins also argues that the settlement agreement entered into by the union requiring him, an employee with documented medical issues, to take no more than three days of unscheduled leave over an entire year, was simply unconscionable.

The government argues that the AJ evaluated the credibility of the witnesses at the hearing and properly found that Dinkins had failed to meet his heavy burden of demonstrating that the union agreed to an extension of the LCA without his consent. The government points out that the AJ credited the testimony of one of Dinkins' supervisors, who testified that she held a meeting with Dinkins to inform him of the specific terms of the settlement agreement, in response to which Dinkins "hugged her, thanked her, and stated that 'he would do better.'" A second supervisor confirmed that testimony. The government further argues that Dinkins ratified the settlement by continuing to work in his position for almost six months. The government notes that the settlement agreement simply states that the LCA shall remain in effect for one additional year. The government therefore contends that the waiver clause in the LCA is binding upon Dinkins.

We conclude that the Board correctly determined that it lacked jurisdiction based upon Dinkins' waiver. The Board derives its jurisdiction by law, rule, or regulation. 5 U.S.C. § 7701(a). When a preference-eligible Postal Service employee, entitled to a Board appeal, settles a union-negotiated grievance proceeding, that course of action is presumed to be voluntary and may divest the Board of jurisdiction over the underlying matter. *Mays v.*

*U.S. Postal Serv.*, 995 F.2d 1056, 1058-59 (Fed. Cir. 1993). Even when a settlement agreement does not explicitly abandon the right to a Board appeal, the Board lacks jurisdiction unless the agreement expressly reserves the employee's right to seek Board review. *Id.* at 1060 ("The burden is on the employee to expressly reserve the [right of appeal] if he chooses to settle a grievance."). An employee seeking to establish Board jurisdiction bears a heavy burden to show the involuntariness of a settlement. *Asberry v. U.S. Postal Serv.*, 692 F.2d 1378, 1380 (Fed. Cir. 1982).

We are not persuaded by Dinkins' argument that the union entered into a grievance settlement with the Postal Service without his consent. Dinkins does not dispute that the union filed the grievance on his behalf. The AJ found, based upon her determinations of witness credibility, that Dinkins had previously filed grievances and was fully aware of the grievance procedures as well as the fact that the union representative could enter into a grievance settlement on his behalf. The AJ also credited witness testimony that Dinkins was informed of the settlement agreement shortly after the settlement and he expressed his appreciation to his supervisor for obtaining the settlement. We therefore find no error in the AJ's conclusion that Dinkins had failed to meet his heavy burden to show the involuntariness of the settlement and was bound by the agreement entered into by the union. *See Mays*, 995 F.2d at 1058-59 (upholding the finding of voluntariness of a settlement agreement that was signed by the union representative rather than the employee). Moreover, by returning to work, Dinkins ratified the settlement negotiated by the union and established his assent to the agreement by accepting the fruits of the settlement. *Id.*

The grievance settlement plainly states that the LCA shall be extended for an additional year and that Dinkins

would be subject to removal for failure to comply with any of the terms of the LCA. Under the LCA, Dinkins waived his right to appeal any future removal based on the prior notice. We also agree with the Board that the Postal Service could have simply removed Dinkins for his original violation of the LCA. Dinkins does not dispute that he had numerous unscheduled absences and was AWOL during the initial six month term of the LCA. We are not persuaded by Dinkins' logic that by extending the LCA and providing him with another opportunity to improve his job attendance, the Postal Service reinstated his previously waived appeal rights. Lastly, we decline to address Dinkins' unconscionability argument because he did not raise it below.

Because we conclude that the grievance settlement extended the LCA and that Dinkins expressly waived his right to appeal any subsequent removal as part of his Last Chance Agreement, there is no basis for Board jurisdiction in this case. Accordingly, we *affirm* the Board's decision dismissing the appeal for lack of jurisdiction.

## AFFIRMED

### COSTS

No costs.